IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOHN REEVES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 5:21-CV-272-H-BQ |
| | § | |
| STATE FARM LLOYDS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff John Reeves filed a claim with his insurance carrier, Defendant State Farm Lloyds (State Farm), concerning storm damage to his home. Reeves subsequently invoked the appraisal provision of his homeowners insurance policy. After reviewing the appraisal award, State Farm declined to pay certain line items, finding they were not covered by Reeves's policy. Reeves thereafter filed this action.

State Farm now asks this Court to (1) protect it from all discovery related to the appraisal process, and (2) exclude testimony regarding the appraisal process. ECF Nos. 17, 18, 27. Reeves opposes these requests. ECF No. 21. Because information related to the appraisal process is relevant to Reeves's claims in this action, and State Farm has not met its burden under Fed. R. Civ. P. 26 to obtain a protective order, the Court **DENIES** State Farm's Motions to Exclude and for Protection. ECF No. 17.

---

[1] The Honorable James Wesley Hendrix, United States District Judge, has referred this case to the undersigned for pretrial management, including resolution of "nondispositive matters" such as "discovery disputes." ECF No. 23.

I.  Background

A. Origin of the Dispute

Reeves filed a claim with State Farm concerning storm damage to his home. Pl.'s Original Pet. 2–3, ECF No. 1-3. After Reeves disagreed with State Farm's payment of his claim, he invoked the appraisal provision of his homeowners insurance policy. *Id.* at 5–6; *see* Pl.'s App. 1–8, ECF No. 22. Reeves and State Farm each appointed an appraiser in accordance with the policy, and the appraisers ultimately reached agreement and issued an appraisal award concerning the value of property damage. Pl.'s Original Pet. 6; *see* Pl.'s App. 55; Def.'s App. 39, ECF No. 19.

But State Farm declined to pay certain "line items in the appraisal award related to the dwelling roof, shed roof, and exterior," claiming that those items are "not covered under the terms, conditions, and exclusions of the [p]olicy." Def.'s Br. 1, ECF No. 18; *accord* Pl.'s Original Pet. 6; Pl.'s App. 60–63; Def.'s App. 3. Thereafter, Reeves filed suit in the 72nd Judicial District Court, Lubbock County, Texas, and State Farm removed the case to this Court. ECF No. 1, at 1. In his Petition, Reeves asserts claims against State Farm for: (1) breach of contract, i.e., the homeowners insurance policy; (2) violations of the Texas Insurance Code Sections 541 and 542, including delay in payment of claim; (3) the Texas Deceptive Trade Practices Act (DTPA) for, *inter alia*, breach of express warranty and misrepresenting its adjusting and investigative services; and (4) common law breach of duty of good faith and fair dealing. Pl.'s Original Pet. 7–12.

B. Parties' Arguments

Through its motion, State Farm "asks this Court to exclude all evidence related to the appraisal process and protect [it] from all discovery into the appraisal process, including but not limited to all testimony from appraisers Matt Self and Lane Johnson." Def.'s Br. 2; *see* Def.'s Mot. to Exclude & Mot. for Protection 2, ECF No. 17. State Farm argues that the appraisal

evidence is irrelevant because under Texas state law, the appraisal only establishes the value of loss—it does not determine policy coverage, which is an issue for the courts. *See* Def.'s Br. 2–6. Since an appraisal award only sets the value of damages, State Farm also asserts that any appraisal information will confuse or mislead a jury and is cumulative. *Id.* In addition, State Farm contends that communications made during the appraisal process are confidential. *Id.* at 3 (quoting Tex. Civ. Prac. & Rem. Code § 154.073).

Reeves opposes State Farm's requests, arguing that prohibiting discovery of any information related to the appraisal process "flies in the face of" Rule 26 of the Federal Rules of Civil Procedure, "which is designed to promote a liberal and permissive discovery process." Pl.'s Resp. 5, ECF No. 21. Reeves reasons that whether State Farm should have paid the line items in the appraisal award "is a function of whether those items were covered, which in turn is a function of causation (*i.e.*, hail damage versus wear-and-tear)." *Id.* at 8. The jury must therefore consider causation, and the appraisal process is relevant to that issue. *Id.*

Reeves maintains that the appraisal information is not only relevant to the causation question but also to his extra-contractual causes of action, including claims under the Texas Insurance Code and the DTPA. *See id.* at 4–8. In Reeves's view, the Court should not prevent the parties from inquiring about, *inter alia*, Mr. Johnson's (State Farm's appraiser) "first-hand knowledge of the weather related damage to [Reeves's] home, his findings, conclusions, and opinions, his basis for those opinions, his experience, and his communications with State Farm." *Id.* at 4–5. Reeves contends that at the very least, the appraisal evidence is discoverable. *See id.* at 8. Moreover, Reeves disagrees with State Farm's contention that the appraisal process is confidential. *Id.* at 9 n.4.

In reply, State Farm reasserts that "[b]ecause the amount of loss, if owed, has been determined [through the appraisal award], any evidence of damages is simply not relevant." Def.'s Reply 1, ECF No. 27. That is, "the appraisal award does not establish liability on an insurance claim," and appraisers cannot opine as to coverage. *Id.* at 2. State Farm avers that "[d]iscovery of the appraisal process and admitting the award confuses amount of loss with liability and undermines the policy provisions." *Id.* at 3. Therefore, State Farm maintains "[t]here is no valid reason for this Court to allow any discovery of the appraisal process." *Id.* at 5.

## II. Legal Standards

### A. Discovery

Rule 26(b) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Information must therefore be nonprivileged, relevant, and proportional to the needs of the case to constitute discoverable material. *See Samsung Elecs. Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017) ("Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements.").

Conversely, Rule 26(c)(1) authorizes the Court to issue a protective order, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Under Rule 26(c), a court may impose a protective order that, *inter alia*, forbids "the disclosure or discovery" or prohibits "inquiry into certain matters, or limit[s] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A), (D).

"The burden is upon the party seeking the protective order to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Meisenheimer v. DAC Vision Inc.*, No. 3:19-cv-1422-M, 2019 WL 6619198, at *2 (N.D. Tex. Dec. 4, 2019) (brackets omitted) (quoting *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). Courts have generally concluded that to obtain a protective order, the moving party must show both "good cause and a specific need for protection." *Id.* (citing *Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990)). The Fifth Circuit has noted the following with respect to Rule 26(c)'s good cause requirement:

> [T]he federal courts have superimposed a somewhat demanding balancing of interests approach to the Rule. Under the balancing standard, the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party. Courts also weigh relevant public interests in this analysis.

*Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F.3d 540, 555 (5th Cir. 2016) (internal quotation marks and footnotes omitted). In addition, to successfully *resist* a motion for protective order, it may at times be necessary for the party seeking discovery "to make its own showing of . . . the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues." *Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *4 (N.D. Tex. Oct. 23, 2017).

Courts have broad discretion in determining whether to impose a protective order. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985). But protective orders barring depositions are rarely granted, "and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *see Bucher v. Richardson Hosp.*

*Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994) ("Protective orders prohibiting depositions are rarely granted.").

### B. Appraisal Clauses and the Scope of Appraisals

"Appraisals are a 'means of resolving disputes about the amount of loss for a covered claim.'" *Salas Realty LLC v. Transp. Ins. Co.*, 425 F. Supp. 3d 751, 754 (N.D. Tex. 2019) (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009)). Insurance policies often contain appraisal clauses, which "are generally enforceable, absent illegality or waiver." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 409, 407 (Tex. 2011).

In Texas, appraisals are limited to determining the amount of loss—liability is an issue reserved for the courts.[2] *Johnson*, 290 S.W.3d at 889–90. Although "[t]he line between liability and damage questions" is not always clear (*id.* at 890), the Texas Supreme Court has provided courts general guidance for making this determination.

In *Johnson*, just as in the case at bar, the insured claimed a covered loss for hail damage to a roof. *Id.* at 887. The insurance company's "inspector concluded that hail had damaged only the ridgeline of [the] roof," while the insured's contractor "concluded the entire roof needed to be replaced." *Id.* In accordance with her policy, the insured demanded an appraisal, but the insurance company refused, claiming that the parties disagreed as to the cause of the damage—not the amount of loss—and an appraisal was therefore inappropriate. *Id.* at 888.

---

[2] Neither party specifically addresses the issue of what state's law applies in evaluating appraisal clauses, but they apparently agree that Texas substantive law governs this action. *See* Def.'s Mot. 3–5; Pl.'s Resp. 5–7. Because the parties have not made choice of law an issue before the Court, or offered a reason to conclude otherwise, the Court will similarly apply Texas law. *See, e.g., Miller v. Ret. Sys. Grp., Inc.*, No. H-09-834, 2012 WL 13156988, at *11 n.105 (S.D. Tex. Mar. 2, 2012), *R. & R. adopted by* 2012 WL 13156809 (S.D. Tex. Apr. 3, 2012) ("Because neither party addresses choice of law, the court assumes that the parties agree Texas law applies to the contract cause of action.").

The Texas Supreme Court held that although determining the amount of hail damage necessarily required the appraiser to decide causation, appraisal was nevertheless warranted. *See id.* at 893, 895. In so holding, the court defined the scope of an appraisal, explaining that "when different causes are alleged for a single injury to property, causation is a liability question for the courts." *Id.* at 892. But "when different types of damage occur to different items of property," i.e., a divisible injury, "appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* Similarly, appraisers may distinguish between "loss due to a covered event" and that "from a property's pre-existing condition." *Id.* That is, "appraisers can decide the cost to repair each [damaged item] without deciding who must pay for it." *Id.* at 894.

In the case of divisible damage, for example, appraisers can assess causation when evaluating a property that has sustained covered damages but also has pre-existing wear and tear (i.e., damage not covered by most insurance policies). *Id.* at 892–93. The Texas Supreme Court reasoned that if appraisers could not "allocate damages between covered and excluded perils," appraisal clauses would be "largely inoperative." *Id.*

### III. Discussion

State Farm argues that information surrounding the appraisal process is not relevant to Reeves's claims because appraisers do not have authority to opine on coverage. Def.'s Br. 2, 5–6; Def.'s Reply 1, 5. Stated differently, State Farm contends that because appraisers can only testify as to damages, any testimony beyond that setting the loss (i.e., the appraisal award) is cumulative. Def.'s Br. 2–6; Def.'s Reply 1, 5.

The Court agrees with the parties that an appraisal award does not dictate coverage. *Johnson*, 290 S.W.3d at 889–90. But *Johnson* expressly provides that appraisers may, for example, consider "pre-existing wear and tear . . . in *valuing* the amount of loss." *Id.* at 893

7

(emphasis added). Thus, "[a]ny appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between damages for which coverage is claimed from damages caused by everything else." *Id.*; *see Griffin v. State Farm Lloyds*, No. SA-20-CV-1198-OLG-HJB, 2021 WL 7184962, at *3 (W.D. Tex. Nov. 22, 2021) ("Because the appraisal panel has the power to determine causation, it also necessarily has the power to determine an appropriate remedy to the damages caused, be it repair to a few roof tiles or replacement of the entire roof."). As a result, the fact that an appraiser cannot determine coverage does not mean that he will not have "first-hand knowledge" relevant to the causation issue, such as his observations concerning the roof's condition and apparent damage, his findings underlying the appraisal award, and the bases for those findings. Pl.'s Resp. 4–5. The appraisal process information is therefore not only relevant to Reeves's breach-of-contract claim, but also his claims under the Texas Insurance Code (including delay in payment of claim and failure to conduct reasonable investigation) and the DTPA (for, *inter alia*, breach of express warranty and misrepresenting its adjusting and investigative services). *See, e.g., Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 573 (N.D. Tex. 2018) ("To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." (citation omitted)); *Griffin v. State Farm Lloyds*, No. 5:20-cv-1198-OLG, ECF No. 60 (W.D. Tex. Jan. 13, 2022) (indicating that the parties deposed the appraisal umpire concerning hail damage to plaintiff's roof); *United Fire & Cas. Co. v. Gossetts, Inc.*, No. 07-18-00204-CV, 2019 WL 2572042, at *3 (Tex. App.—Amarillo June 21, 2019, no pet.) (reviewing summary judgment evidence, which included appraiser's deposition testimony that "discovered hail damage").[3]

---

[3] The Court extended an opportunity to both parties to provide additional case authority for their respective positions. State Farm concedes it has not found any case law directly supporting its argument that the appraisers' opinions on causation are irrelevant or not subject to discovery. Reeves, however, supplied the *United Fire* case, in which the appellate court relied on an appraiser's deposition testimony in determining that the trial court did not err in denying

8

Turning to State Farm's contention that the appraisal process information should be excluded under Rule of Evidence 403, the Court finds that whether the not-yet-obtained discovery is ultimately confusing, misleading, or cumulative is not germane to the *discoverability* of such information. Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). Indeed, the Court need only consider, at this stage, whether the information is nonprivileged, "relevant to any party's claim or defense[,] and proportional to the needs of the case." *Id.* State Farm has not argued that the prospective discovery is not proportional, and as discussed above, the Court has already determined the information is relevant.

The Court therefore considers State Farm's final argument: that information surrounding the appraisal process is confidential under § 154.073 of the Texas Civil Practice and Remedies Code. Def.'s Br. 3. In support, State Farm cites to *Barbara Technologies Corp. v. State Farm Lloyds*, which describes "[t]he appraisal process[] as an agreed-upon mechanism for dispute resolution provided by the parties' insurance policy." 589 S.W.3d 806, 815 (Tex. 2019); Def.'s Br. 3. State Farm asserts that "[l]ike other alternative dispute resolution procedures, any communication made during this [appraisal] process 'is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.'" Def.'s Br. 3 (quoting Tex. Civ. Prac. & Rem. Code § 154.073).

Section 154.073(b) provides as follows:

> Any record made at an alternative dispute resolution procedure is confidential, and the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.

---

summary judgment on the insured's breach of contract claim. 2019 WL 2572042, at *3. This case not only suggests that an appraiser can be subject to a deposition, but also that the appraiser's testimony is relevant to the issue of causation. *See id.*

9

State Farm cites no authority demonstrating that chapter 154 (Alternative Dispute Resolution Procedures) generally applies to appraisals conducted under a homeowners insurance policy, or specifically that such an appraisal qualifies as "an alternative dispute resolution procedure" under the statute. While chapter 154 does not define what constitutes "an alternative dispute resolution procedure," subchapter B references mechanisms available to a court for resolving litigation, *i.e.*, mediations, mini-trials, moderated settlement conferences, summary jury trials, and arbitrations. §§ 154.023–.027; *see also* § 154.021(a) (listing a variety of alternative dispute resolution methods to which a court can refer a pending case). Clearly absent is any express mention of an appraiser appointed under the terms of a homeowners policy. *See* §§ 154.023–.027.[4]

More fundamentally, a plain reading of the statute's context argues against any interpretation that would apply the chapter to the appraisals at issue herein. The purpose of chapter 154 is "to encourage the peaceable resolution of disputes, with special consideration given to disputes involving the parent-child relationship, . . . and the early settlement of *pending litigation* through voluntary settlement procedures." § 154.002 (emphasis added). As such, "[i]t is the responsibility of all *trial and appellate courts* and their court administrators to carry out the policy under Section 154.002" and, in furthering that purpose, "[a] *court* may, on its own motion or the motion of a party, refer a pending dispute for resolution by an alternative dispute resolution procedure . . . ." § 154.021(a) (emphasis added). Chapter 154 clearly references alternative dispute resolution within the context of court involvement, not private party disputes.

---

[4] While § 154.021(a)(3) makes general reference to "a nonjudicial and informally conducted forum for the voluntary settlement of citizens' disputes through the intervention of an impartial third party," in the Court's view this provision would similarly not include two insurance contract appraisers. Even assuming such inclusion, however, the statute nevertheless contemplates referral by *a court of a pending dispute*, which for the reasons discussed below again excludes these appraisals.

Here, the parties contemplated, through their agreement, that the appraisals occur *in lieu* of a court referral (*see* Pl.'s App. 6, noting that "[a]ppraisal is a non-judicial proceeding" and "[a] party may not demand appraisal after that party brings suit or action against the other party relating to the amount of loss"), and they in fact engaged in the appraisal process *prior* to Reeves's filing this action. Each party selected an appraiser—ostensibly, impartial third parties—in accordance with the policy's terms, and after each appraiser evaluated the damage, they reached agreement concerning the award amount, resulting in a final valuation as to the amount of loss. *See id.* at 17. These discussions and the ultimate agreement reached would therefore not fall within the provisions of chapter 154 or its protections. *See, e.g., Abbott v. GameTech Int'l, Inc.*, No. 03–06–00257–CV, 2009 WL 1708815, at *4–5 (Tex. App.—Austin June 17, 2009, pet. denied) (concluding parties' "private settlement discussions" were not confidential where "they were not participants in any of the alternative dispute resolution procedures described in chapter 154").

In sum, the appraisal process—a pre-litigation, contractually-required procedure—differs from the mechanisms described in chapter 154. Thus, the Court concludes that chapter 154 does not apply to the appraisal process, and communications concerning same are not confidential under § 154.073.[5] Finding the appraisal process information relevant and non-confidential, the Court concludes it is discoverable under Rule 26.

Finally, the Court observes that State Farm's request for a protective order is solely based on the grounds discussed above. State Farm does not expressly argue that there is good cause and a specific need for protection (e.g., "from annoyance, embarrassment, oppression, or undue burden

---

[5] State Farm cites *Allison v. Fire Insurance Exchange*, 98 S.W.3d 227 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.) for the proposition that appraisal process communications are confidential. Def.'s Br. 3. However, *Allison* discussed § 154.073 within the context of settlement offers during a mediation—not appraisal process awards. 98 S.W.3d at 259–60. Thus, the Court does not find *Allison* applicable to the facts of this case. Other than § 154.073 and *Allison*, State Farm cites no other authority for its assertion that the appraisal process information is confidential. *See* Def.'s Br. 3.

or expense") as required. *See* Fed. R. Civ. P. 26(c)(1); *Landry*, 901 F.2d at 435; *Meisenheimer*, 2019 WL 6619198, at *2; *see also Terra Int'l*, 134 F.3d at 306 (stating that the movant has the burden of showing the necessity of a protective order). Regardless, as previously discussed, State Farm's argument that the discovery is irrelevant, duplicative, or misleading to a jury is unavailing. Because the appraisal process information is discoverable, and State Farm has not shown good cause and a specific need for the protective order, the Court denies State Farm's request. *See, e.g.*, *Kilmon v. Saulsbury Indus., Inc.*, No. MO:17-CV-99, 2018 WL 5800759, at *4 (W.D. Tex. Feb. 13, 2018) (finding movant's "blanket assertions of irrelevancy and disproportionality" did not "establish good cause and a specific need for protection . . . , as is required to obtain a protective order from such discovery"); *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 948 (N.D. Tex. 2017) (denying defendant's request for protective order under Rule 26(c)(1) where defendant did not articulate a specific need for the order but instead only argued that the discovery sought was irrelevant); *Evicam v. Int'l, Inc. v. Enforcement Video, LLC*, No. 4:16-CV-00105, 2017 WL 772539, at *1 (E.D. Tex. Feb. 28, 2017) (denying plaintiff's motion for protective order, concluding "that the depositions [were] relevant and [plaintiff] ha[d] not established good cause").

### IV. Conclusion

In sum, State Farm's effort to obtain a blanket prohibition on any discovery concerning the appraisal process does not comport with Rule 26. State Farm seeks to pre-emptively bar Reeves from conducting *any* discovery related to the appraisal process. Def.'s Br. 2 ("Defendant seeks this relief while discovery is ongoing so that the scope of the proceedings can be appropriately limited."). And while not expressly stated, State Farm effectively asks this Court to make a limine ruling prior to the close of discovery and dispositive motions. *See id.* at 2 (citing Fed. R. Evid.

402 and 403 and discussing the exclusion or limitation of witness testimony), 6 (asking the Court to "exclude testimony regarding the appraisal process"); Def.'s Reply 5 (same).

State Farm has not met its burden of demonstrating that the prospective discovery about the appraisal process is irrelevant, confidential, or otherwise not discoverable, nor has it shown that it is entitled to a protective order. The Court therefore **DENIES** State Farm's Motion to Exclude and Motion for Protection. ECF No. 17.

**SO ORDERED.**

Dated: September 23, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

13